# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| MISTY D.,[1] | Case No. 3:20-cv-00378 |
| Plaintiff, | |
| | District Judge Walter H. Rice |
| vs. | Magistrate Judge Caroline H. Gentry |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## REPORT AND RECOMMENDATIONS[2]

## I. INTRODUCTION

Plaintiff filed an application for Supplemental Security Income and Disability Insurance Benefits in November 2017. Her claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 9), the Commissioner's Memorandum in Opposition (Doc. 10), Plaintiff's Reply (Doc. 11) and the administrative record (Doc. 8).

## II.   BACKGROUND

Plaintiff asserts that she has been under a disability since January 1, 2017. At that time, she was fifty-one years old. Accordingly, she was considered a "person closely approaching advanced age" under Social Security Regulations. *See* § 404.1563(d); 20 C.F.R. § 416.963(d).[3] Plaintiff has at least a high school education.

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 8-2, PageID 59-74), Plaintiff's Statement of Errors (Doc. 9), Commissioner's Memorandum in Opposition (Doc. 10), and Plaintiff's Reply (Doc. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III.   STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

2

less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." (*Id.*)

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (*Id.*) (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

3

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S DECISION

As noted previously, the ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He made the following findings of fact:

> Step 1: Plaintiff has not engaged in substantial gainful activity since January 1, 2017, her alleged onset date.
>
> Step 2: She has the severe impairments of chronic obstructive pulmonary disease, degenerative disc disease, status post left finger tendon repair, polycystic kidney disease, reduced vision in the left eye, osteoarthritis, depression, anxiety, and post-traumatic stress disorder.
>
> Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work subject to the following limitations: she "is capable of occasionally lifting/carrying twenty pounds; frequently lifting/carrying 10 pounds; standing or walking

        six hours of an eight hour workday; and sitting six hours of an eight hour workday. She should have no more than frequent pushing/pulling with the left upper extremity. The claimant cannot climb ladders/ropes/scaffolds. She is capable of occasionally climbing ramps/stairs, stooping, kneeling, crouching, and crawling. She is limited to frequent handling with the left upper extremity. There should be no requirement to read less than 12 point type. There should be no detailed work, such as threading a needle. There should be no more than occasional exposure to extreme heat, cold, and humidity. She should have no more than occasional exposure to fumes, dusts, gases, odors, and poorly ventilated areas. The claimant cannot work around unprotected heights or dangerous machinery. There should be no commercial driving. The claimant is limited to simple, routine tasks in a static work environment with few changes in routine. She should have no fast paced work or strict production quotas. The claimant should have no direct dealing with the public. She should have only occasional contact with coworkers and supervisors."

Step 4:    She is unable to perform any of her past relevant work.

Step 5:    She could perform a significant number of jobs that exist in the national economy.

(Doc. 8-2, PageID 61-73.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.*, 74.)

## V. ANALYSIS

Among other statements of error, Plaintiff argues that the ALJ erred in his assessment of conflicting medical opinions relating to her mental health. Because the Court finds this argument to be persuasive, it need not reach the other arguments raised by Plaintiff.

ALJs are required to follow specific regulations and standards when considering conflicting medical opinions. For claims filed before March 27, 2017, those standards include the "treating physician rule," which requires an ALJ to give "controlling weight"

5

to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

Different standards apply for claims, such as Plaintiff's claims in this case, that were filed after March 27, 2017. Under the new regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion by considering these factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). The first two factors—supportability and consistency—are the "most important factors" and ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). By contrast, ALJs "may, but are not required to, explain how [they] considered" the remaining factors. *Id*.

As to the factor of supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and

6

nonmedical sources in the claim, the more persuasive the medical opinion(s)" will be. 20 C.F.R. § 404.1520c(c)(2).

The ALJ's assessment of the mental health opinions in the record does not comply with these standards. There are three mental health opinions at issue: those rendered by state agency mental health reviewing consultants, Dr. Courtney Zeune and Dr. Audrey Todd, and the opinion of psychological consultative examiner, Dr. Mary Ann Jones.

Dr. Courtney Zeune and Dr. Audrey Todd rendered opinions relating to Plaintiff's mental residual functional capacity. (Doc. 8-3, PageID 138-40, 182-84.) They determined that Plaintiff is able "to sustain attention, concentration, persistence and pace to perform simple, routine tasks that do not have fast-paced performance or strict production quota requirements" and to "interact on an occasional and superficial basis with familiar others in a nonpublic setting." (*Id.*) They also opined that Plaintiff's "ability to handle stress and pressure in the workplace would be reduced but adequate to stresses of routine work that did not involve timed tasks or rate quotas." (*Id.*)

Dr. Mary Ann Jones rendered her opinions after an in-person evaluation. (Doc. 8-7, PageID 704-05.) She opined that Plaintiff could understand, remember, and carry out instructions in a work setting but found that Plaintiff's consistency would be questionable due to "preoccupation with medical limitations, depression and anxiety." (*Id.*) Dr. Jones also found that Plaintiff would likely be limited "in her ability to maintain appropriate attention and concentration and to sustain adequate persistence and pace to perform various work tasks," and "her ability to interact with others in a consistently emotional

7

stable and predictable manner." (*Id.*) Dr. Jones further offered that Plaintiff would likely be limited "in her ability to tolerate the stress associated with normal employment." (*Id.*)

The ALJ reviewed the conflicting medical opinions and found the opinions of Dr. Zeune and Dr. Todd to be "mostly persuasive and consistent with the claimant's history of little, if any, mental health treatment…" (Doc. 8-2, PageID 72.) However, he stated that their recommended "limitations for only superficial interaction are inconsistent with the claimant's testimony that she is able to grocery shop and take the bus without incident." (*Id.*) In contrast, the ALJ determined that Dr. Jones' opinion was "minimally persuasive and somewhat excessive." (*Id.*) He explained that, beyond attending a hospice group following her son's death, Plaintiff had "little to no treatment for her alleged mental health symptoms." (*Id.*) He further reasoned that "her failure to seek mental health treatment with either her primary care provider or with formal mental health providers suggests her symptoms were not as bothersome or as limiting as alleged…" (*Id.*)

The ALJ's assessments do not reflect proper consideration of the consistency and supportability factors, as required by the above-quoted regulations. Further, his uncritical reliance on Plaintiff's failure to seek mental health treatment conflicts with controlling law. Accordingly, for the reasons set forth below, the undersigned recommends that the ALJ's decision be reversed. *See Rabbers*, 582 F.3d at 651 ("'[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'") (citations omitted).

The ALJ erred by failing to explain his consideration of the supportability of Dr. Jones' opinions. Significantly, he did not address the fact that Dr. Jones had based her opinions, in part, upon information that she observed or gathered during Plaintiff's in-person evaluation. For example, as noted above, Dr. Jones opined that Plaintiff would likely be limited "in her ability to maintain appropriate attention and concentration and to sustain adequate persistence and pace to perform various work tasks." (Doc. 8-7, PageID 705.) Dr. Jones supported this opinion with her observations that Plaintiff had difficulty tracking conversation and that "[t]here were times during the interview process when she was so distracted that her attention had to be redirected to the question at hand." (*Id.*, 704-05.) The ALJ did not address this evidence when he found Dr. Jones' opinion to be "minimally persuasive." (Doc. 8-2, PageID 72.) By failing to consider the "supporting explanations presented by [Dr. Jones] to support her medical opinion(s)" when he found those opinions to be minimally persuasive, the ALJ failed to follow the applicable regulations. *See* 20 C.F.R. § 404.1520c(c)(1). Because this error prejudiced Plaintiff on the merits, it requires reversal. *Rabbers*, 582 F.3d at 651.

The ALJ also erred when he considered the consistency of the medical evidence. As noted above, he rejected the opinions of Dr. Zeune and Dr. Todd that Plaintiff should be limited to only superficial interactions, reasoning that this limitation is inconsistent with Plaintiff's ability to grocery shop and take the bus. But the term "superficial" refers to the quality of interactions.[4] *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL

---

[4] By definition, superficial means "of, relating to, or located near a surface." *See* Merriam Webster Online, available at https://www.merriam-webster.com/dictionary/superficial (last visited March 2, 2022).

6257432, at *4 (S.D. Ohio Nov. 30, 2018) (Vascura, M.J.), Report & Recommendation, adopted, 2019 WL 133177 (S.D. Ohio Jan. 7, 2019) (Sargus, D.J.). It is not the same as "occasional" interactions, which refer to the quantity of time spent with individuals. *Id.* The activities at issue—grocery shopping and riding the bus—do not commonly require more than superficial interactions with others. Plaintiff's description of her activities confirms this conclusion. Although she does rely on public transportation such as the bus, she opts for other options when they are available, such as getting a ride from a neighbor, CareSource, or UTS. (Doc. 8-2, PageID 107). When she shops for groceries, she goes "right there and right back home." (*Id.*) Indeed, she explained to Dr. Jones that she "get[s] done what needs to be done and then go[es] home ASAP" because she does not like to be around others and avoids being in large groups. (Doc. 8-7, PageID 700).

      The nature of the activities, coupled with Plaintiff's reports, leads the undersigned to find that the ALJ's conclusion with regard to the consistency factor is not supported by substantial evidence. Specifically, his finding that the "superficial interaction" limitation proposed by Dr. Zeune and Dr. Todd is inconsistent with Plaintiff's ability to ride the bus and shop for groceries is not supported by evidence that "a reasonable mind might accept as adequate to support [this] conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations and citation omitted). Accordingly, the undersigned recommends that the ALJ's decision be reversed and remanded.

      Finally, the ALJ erred by uncritically relying upon Plaintiff's failure to seek mental health treatment to conclude that her mental health issues must not be limiting.

His repeated reliance on Plaintiff's purported lack of mental health treatment or failure to seek treatment is concerning because "[f]or some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (citing *Pates-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). And Plaintiff's failure to seek treatment is not unexplained. She testified that she has a difficult time seeking help because of trust issues stemming from prior emotional and physical abuse, as well as from an incident where she was stabbed while sleeping at a homeless shelter. (Doc. 8-2, PageID 109). There is no indication that the ALJ considered possible reasons for Plaintiff's limited treatment, contrary to Social Security Regulations. *See* Soc. Sec. R. 16-3p, 2017 WL 5180304 ("We will not find an individual's symptoms inconsistent with the evidence in the record [on the basis that the level of treatment is not comparable with the degree of the individual's subjective complaints] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.").

Accordingly, Plaintiff's Statement of Errors is well-taken.[5]

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Court REVERSE the Commissioner's non-disability determination;

2. No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

3. This matter be REMANDED to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendation; and

---

[5] In light of the foregoing, the undersigned declines to address Plaintiff's remaining assertions.

11

4.     This case be terminated on the Court's docket.

    */s/ Caroline H. Gentry*
    Caroline H. Gentry
    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within FOURTEEN days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).